**Pascual Sambrano SAN ROMAN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 08-82-00343-CR.**

Court of Appeals of Texas, El Paso.

Nov. 28, 1984.

Harry Tom Petersen—only on appeal, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., El Paso, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

WARD, Justice.

This is an appeal from a jury conviction for the offense of aggravated rape. The jury assessed punishment at fifty years imprisonment. We reverse and remand.

In Ground of Error No. One, the Appellant asserts that the court erred by including the phrase "unlawfully" in that portion of the charge to the jury applying the requisite mental state. The application portion of the charge read in pertinent part:

Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Pascual Sambrano San Roman, in El Paso County, Texas, on or about February 22, 1982, did then and there unlawfully, intentionally or know-ingly have sexual intercourse with _____, a female not his wife, without the consent of the said _____, and the said Pascual Sambrano San Roman compelled _____ to submit or participate by the use of a threat that would prevent resistance by a woman of ordinary resolution under the same or similar circumstances because of a reasonable fear of harm . . . .

The Appellant complains that the use of the term "unlawfully": (1) authorized conviction for conduct not constituting an offense; (2) authorized conviction on a theory not alleged in the indictment; and (3) authorized conviction on a theory alleged in the indictment as well as a theory not so alleged. These are three of the four instances set out in *Cumbie v. State*, 578 S.W.2d 732 (Tex.Crim.App.1979) which constitute fundamentally defective instructions in the jury charge. Appellant argues that as "unlawful" encompasses a wide range of proscribed activity ranging from tortious conduct to criminal conduct, the necessary culpable mental states of intentionally or knowingly are broadened in violation of the above mentioned charging errors. We note that only "intentionally" and "knowingly" are defined in the charge. Grammatically, it is clear that the term "unlawfully" serves as a modifier to "intentionally" and "knowingly" and it neither broadens the scope of those terms nor does it create a third impermissible mental state. Ground of Error No. One is overruled.

In Grounds of Error Nos. Two and Four, the Appellant alleges that the indictment was fundamentally defective. Appellant first complains that the indictment failed to allege that the threats had been "communicated;" thus omitting an essential element. The indictment read in pertinent part:

[I]ntentionally and knowingly have sexual intercourse with _____, a female not his wife, without the consent of the said _____, and the said PASCUAL SAMBRANO SAN ROMAN compelled _____ to submit and participate by the use of a threat that would prevent resistance by a woman of ordinary resolution under the

same and similar circumstances because of a reasonable fear of harm; and the said PASCUAL SAMBRANO SAN ROMAN did then and there intentionally and knowingly use and exhibit a deadly weapon, to-wit: a knife in the course of the same criminal episode .... ·

■ The applicable former provisions of the Texas Penal Code sec. 21.02(b)(2) provided that intercourse was without the female's consent if:

(2) he compels her to submit or participate by any threat, communicated by actions, words, or deeds, that would prevent resistance by a woman of ordinary resolution under the same or similar circumstances, because of a reasonable fear of harm.

Common sense tells us that, when the indictment is read in its entirety, the phrase "use of a threat" adequately describes "communication." *See: Banks v. State*, 530 S.W.2d 940 (Tex.Crim.App.1975). Appellant next complains that it was error not to allege a culpable mental state for the action of "compelling by threat." By the same reasoning indicated above, the phrase "use of a threat," of necessity, reflects a prior culpable mental state. *See also: Jason v. State*, 589 S.W.2d 447 (Tex.Crim. App.1979). Grounds of Error Nos. Two and Four are overruled.

In Grounds of Error Nos. Three and Five, the Appellant alleges the charge to the jury was fundamentally defective. The charge tracked the indictment. Appellant's complaints center around the same purported defects discussed above with regard to the indictment. As such, no error is shown. Grounds of Error Nos. Three and Five are overruled.

■ In Ground of Error No. Seven, the Appellant asserts that he was not afforded reasonably effective assistance of counsel. The constitutional right to counsel does not mean errorless counsel. In order to meet the constitutional standard, counsel must provide reasonably effective assistance of counsel. *Boles v. State*, 598 S.W.2d 274 (Tex.Crim.App.1980). In reviewing assertions of ineffectiveness of counsel, the totality of the representation is examined as opposed to focusing upon isolated acts or omissions; the reviewing court does not engage in hindsighted comparisons of how other counsel might have tried the case. *Boles, supra.* Notwithstanding this rather generous standard, we find from the totality of the record that the Appellant did not receive reasonably effective assistance of counsel. During voir dire, trial counsel continually attempted to contract the jury panel despite numerous objections by the State, giving rise to the possibility that counsel was not familiar with that concept. Counsel did not explain the range of punishment nor did he inquire into the views of the panel members with regard to granting probation in an aggravated rape case. Rather, he apparently chose to accept the State's summary presentation with regard the issue of probation. During the voir dire, counsel entered into rather peculiar soliloquies with regard to sex and human love. There was no inquiry concerning the concept of "reasonable doubt" and the burden of proof being upon the State. Counsel neither ascertained whether the panel members had been victims of crime nor did he inquire into any connection the panel members might have had with law enforcement. Counsel related to the panel how he had talked to his bartender and hairdresser concerning the case. Counsel stated:

Believe it or not, it's not any joke, this is not intended to make you laugh, I talked to my hairdresser, and I talked to the bartender in a little old bar on Wyoming Street, and they said—I gave them the facts, not naming any names, and they told me, "Ed, when there's sexual contact, when there's sexual intercourse, there simply has to be medical evidence somewhere—."

This statement in conjunction with counsel's discourse of the vagaries of human love elicited a hostile response from several panel members. Juror No. 34, an ex-registered nurse, stated she disagreed with counsel's statement concerning the projected medical evidence. She still appeared

hostile to counsel's statement concerning the hairdresser and bartender and his analysis of human love when she was interviewed at the bench. She gave a rather tentative statement that she could be impartial. This panel member was seated on the jury.

During the guilt-innocence stage of trial, the record reveals numerous instances of counsel's failure to object or utilize the correct objection. (*See:* R II, 116, 153, 160, 164, 372, 373). During the presentation of the defense's case, the following exchange took place:

A: Well, I don't know her by the looks but I know her by my husband because he has mentioned her to me.

Q: How did he mention her to you ma'am?

STATE: Your Honor, I object to that as being hearsay. What her husband told her about Mrs. _____ is pure hearsay.

DEFENSE: It is offered to prove the truth of the matter asserted.

STATE: That's the very reason why it is objectionable.

THE COURT: The Court will so sustain the objection.

DEFENSE: Thank you, Your Honor. Your Honor, I would like the Court to admonish Counsel for laughing. This is not a laughing matter.

THE COURT: Well, the Court did not see it.

This exchange illustrates counsel's lack of understanding of the law of evidence as it appears throughout the trial. The defensive theory presented at trial attempted to demonstrate that no rape had occurred. The Appellant's wife took the stand and indicated that her husband had been having an affair with the complainant and his abandonment of the affair led to the complainant fabricating the incident. However, when the complainant took the stand, aside from some questions concerning time, counsel waived any further cross-examination. It is difficult to perceive any impelling tactical advantage to such a procedure.

During final argument, the prosecutor made the following statement:

[W]hy when they came to his house did he have to hide in the closet?

All he'd have to do is come out and explain what happened, what occurred.

You heard the police officer say when he was confronted with the charges, with an explanation, the answer from the witness stand, none. No explanation.

. . . . .

Do you think that's the way a normal person would respond to the charge of Aggravated Rape, and his wife would respond to the charge of Aggravated Rape? Think about it.

The above constitutes, at the very least, an indirect comment upon the failure of the Appellant to testify. Further, comment upon the Appellant's post-arrest silence indicates reversible error. *Conway v. State,* 625 S.W.2d 35 (Tex.App.—Eastland 1981, PDRR). Appellant's counsel made the following argumentative objection to the above:

COUNSEL: Your Honor, again, I must object. I wish Counsel would stick to the meat of this matter here, the issue here is whether or not this lady had sexual intercourse, and whether or not there was penetration by the male organ, and the evidence says no, your Honor, and Counsel is trying to mislead this Jury.

This objection was properly overruled; thus nothing was preserved for error.

█ The most telling example of ineffectiveness occurred at the punishment stage of trial. Appellant filed an application for probation. It is clear that a jury can grant probation in this type of case. Tex.Code Crim.Pro.Ann. art. 42.12 secs. 3, 3a, 3c and 3f (Vernon 1979). Counsel did not offer any evidence either through the Appellant or his wife (who had testified previously) demonstrating his eligibility for probation. The court gave a charge concerning probation and counsel argued for probation. When the State argued that the Appellant had failed to carry his burden with regard

to probation, Appellant's counsel countered that he had no such burden. It is clear that Appellant failed to receive reasonably effective assistance of counsel. Ground of Error No. Seven is sustained.

In light of the foregoing discussion, we find it unnecessary to respond to Ground of Error No. Six.

The judgment of the trial court is reversed and the case is remanded for a new trial.