Evaristo VALENCIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–91–00152–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 24, 1993.

Discretionary Review Granted April 5, 1995.

Randy Schaffer, Houston, for appellant.

John B. Holmes, Mary Lou Keel, James R. Buchanan, Houston, for appellee.

Before DUGGAN, HUTSON–DUNN and O'CONNOR, JJ.

## OPINION

DUGGAN, Justice.

A jury found appellant guilty of delivery of at least 400 grams of cocaine and assessed punishment at 75–years confinement and a $250,000 fine. Appellant asserts two points of error on appeal. We affirm.

In his first point of error, appellant asserts the prosecutor's punishment phase argument regarding application of the parole law constituted fundamental error.

### Prosecutorial argument

During closing arguments at the punishment phase of trial, the prosecutor made the following statement about that part of the court's charge containing the parole and good time instruction mandated by TEX.CODE CRIM.P.ANN. art. 37.07, § 4 (Vernon Supp. 1993):

> The charge talks about the award of good conduct time to a prisoner who exhibits good behavior and parole. To caution you right now, first off, you can't guess or estimate anything about good conduct time or parole to this guy. This is for your information, for you to know that whatever the term of years in a case that a defendant gets sentenced to, his time in the penitentiary can be reduced by the award of good time and by parole. They say the formula here as to when he becomes eligible for parole would be when a defendant has his actual time plus his good conduct

> time added together and they equal one fourth of the sentence. *That means if there is a forty-year sentence, one fourth of that is ten years, and let's say you get three days credit for every one you serve. That's the good conduct time. That means you can effectively become eligible for parole on a forty-year sentence in about two years. That's the way this reads.*

(Emphasis added.)

■ Permissible jury argument must fall within one of four general areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to argument of opposing counsel; and (4) pleas for law enforcement. *Albiar v. State,* 739 S.W.2d 360, 362 (Tex.Crim.App.1987); *Morris v. State,* 755 S.W.2d 505, 509 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). Counsel may draw all inferences from the record that are "reasonable, fair, and legitimate." *Allridge v. State,* 762 S.W.2d 146, 156 (Tex.Crim.App.1988), *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989).

■ Any error committed due to improper jury argument is generally waived by failure to make a proper and timely objection. *Briddle v. State,* 742 S.W.2d 379, 389 (Tex.Crim.App.1987), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *Urbano v. State,* 760 S.W.2d 33, 37 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). An exception to the general rule occurs when the statement is so prejudicial that no instruction could have cured the harm. *Green v. State,* 682 S.W.2d 271, 295 (Tex.Crim.App. 1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985); *Johnson v. State,* 734 S.W.2d 199, 206 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). For example, improper jury argument is reversible error if, in light of the record as a whole, it is extreme, manifestly improper, violative of a mandatory statute, or injects into the trial proceeding new facts harmful to the accused. *Jacobs v. State,* 787 S.W.2d 397, 406 (Tex. Crim.App.1990), *cert. denied,* 498 U.S. 882, 111 S.Ct. 231, 112 L.Ed.2d 185 (1990).

### Mathematical error

■ It is not error for the State to quote or paraphrase the jury charge. *Whit-*

*ing v. State*, 797 S.W.2d 45, 48 (Tex.Crim. App.1990). The charge included the same information about the parole laws that the prosecutor argued, except for his italicized statement. Although the prosecutor's mathematical calculation was incorrect,[1] it could have been cured by an instruction. Thus, counsel should have objected, and waived error in failing to do so unless some other aspect of the argument was so prejudicial that no instruction could have cured the harm.

■ Appellant urges that the incurable vice in the prosecutor's argument, in addition to the mathematical error, was that it was an appeal to the jury to circumvent the court's instruction not to discuss parole, and to assess a punishment that would compensate for the application of the parole laws.

Appellant asserts that three decisions control the disposition of this point: *Jones v. State*, 725 S.W.2d 770 (Tex.App.—Dallas 1987, pet. ref'd); *Clay v. State*, 741 S.W.2d 209 (Tex.App.—Dallas 1987, pet. ref'd); and *Wheatly v. State*, 764 S.W.2d 271 (Tex.App.—Houston [1st Dist.] 1988, no pet.). In each, he observes, the court held that the argument improperly asked for a sentence to compensate for the application of the parole law, and constituted fundamental error requiring reversal despite the lack of an objection.

In *Jones*, the jury charge contained the statutory instructions "not to consider the extent to which good conduct time may be awarded or forfeited," and "not to consider the manner in which the parole law may be applied to this particular defendant." 725 S.W.2d at 771. The prosecutor nevertheless argued:

In this particular case, because it is an aggravated robbery, any sentence that you give will be cut by effect of the parole laws.

. . . .

So, I'm asking for a twenty ,year sentence, calendar time in the penitentiary. *In order to accomplish that, you must give at least a sixty-year sentence to keep him in the penitentiary for twenty calendar years.* Okay?

725 S.W.2d at 721 (emphasis added.)

The Dallas Court of Appeals noted that the argument urged the jury to apply the parole law to this defendant; further, the argument was a misstatement of the law, implying erroneously "that the *only* way the defendant could possibly serve twenty calendar years in the penitentiary is if the jury assesses a sixty-year sentence. This is not true." 725 S.W.2d at 772 (emphasis in original). By contrast, the prosecutor in our case did not expressly urge the jury to apply the parole law ("you can't guess or estimate anything about good conduct time or parole to this guy"). The prosecutor stated the incorrect example of parole eligibility calculation as a hypothetical situation ("let's say you get three days credit for every one you serve"). He did not ask the jury to assess a particular punishment to achieve a desired effect, as in *Jones*, because of the parole or good time laws.

In *Clay*, a post-*Rose*[2] and pre-constitutional amendment decision, the charge contained the instruction that the jury was "not to consider the manner in which the parole law may be applied to this particular defendant." *Clay*, 741 S.W.2d at 211. Nevertheless, the prosecutor argued that "the judge says you can consider the existence of that [parole] law and how it may affect the verdict that you give in this case", 741 S.W.2d at 210.

---

1. A prisoner can earn maximum good time of 45 days for each 30 days served. Tex.Gov't Code Ann. § 497.003 (Vernon 1988). Thus, earning the maximum good time possible, a prisoner could be eligible for parole on a 40-year sentence in four years, not two. Although additional administrative good time can be given in emergency overcrowding situations, it cannot be awarded to prisoners convicted of, inter alia, aggravated delivery of a controlled substance. *Id.* §§ 498.025, 498.027 (Vernon 1988).

2. *Rose v. State*, 752 S.W.2d 529, 537 (Tex.Crim. App.1987) (op. on reh'g), held that a parole instruction under former Tex.Code Crim.P.Ann art. 37.07, § 4 (act of June 13, 1985, 69th Leg., R.S., ch. 576, sec. 1, 1985 Tex.Gen.Laws 2195, *amended by* act of May 6, 1987, 70th Leg., R.S., ch. 66, sec. 1, 1987 Tex.Gen.Laws 170, *amended by* act of June 19, 1987, 70th Leg., R.S., ch. 1101, sec. 15, 1987 Tex.Gen.Laws 3765), violated the separation of powers doctrine and the due course of law clause of the Texas Constitution.

The court's charge did not state this, and the prosecutor's argument therefore contradicted the charge. The court held that this contradiction of the charge, coupled with the prosecutor's "detailed explanation of the 'mechanics' of parole eligibility, was tantamount to telling the jury to disregard the charge of the court on the applicable law and to apply the parole laws." *Id.* at 211. By contrast, the prosecutor in our case did not contradict the court's charge. He told the jury they "can't guess or estimate anything about good conduct time or parole," and did not make a definite statement as to good time credit ("let's say you get three days credit for every one you serve").

In *Wheatly*, another post-*Rose*, pre-constitutional amendment decision, the appellant did not object when the prosecutor stated in punishment hearing argument:

> In assessing punishment that fits the crime, you're free to look at the Charge, specifically page three. Under the law applicable in this case if the defendant is sentenced to a term of imprisonment he'll not become eligible for parole until actual time served equals one-third of the sentence imposed or 20 years, whichever is less. You're free to read that along with everything else in the Charge. Will not become eligible for parole until actual time served equals one third of the sentence imposed or 20 years, whichever is less. Look at it as well as the rest of the charge.

764 S.W.2d at 272–3. Our opinion in *Wheatly* noted that the charge was unconstitutional under *Rose*, *and* that the jury argument "emphasized the [then] unconstitutional portion of the charge." *Id.* at 273. Our finding of unconstitutional *Rose* error made the reference to jury argument *dicta.*

On November 7, 1989, a constitutional amendment was adopted granting the legislature authority to enact parole law, as well as laws permitting courts to inform juries about the effect of good conduct time and eligibility for parole. TEX. CONST. art. IV, § 11(a). The amendment eliminated the applicability of *Rose* to cases tried after the amendment's enactment. *Harrell v. State*, 834 S.W.2d 540, 544 (Tex.App.—Houston [14th Dist.] 1992 pet. ref'd). Appellant's alleged offense and his trial took place in 1990. Because the parole law instruction was constitutionally sanctioned, appellant would now be required to object to preserve the error we ruled on in *Wheatly*. *Taylor v. State*, 827 S.W.2d 538, 542 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).

In summary, unlike the objectionable arguments in *Jones, Clay,* and *Wheatly,* the prosecutor's comment spoke to a constitutionally mandated jury instruction, did not state that good conduct time and parole would always operate to reduce a sentence by a certain amount, did not attempt to have the jury figure how the parole laws would operate in appellant's case, and did not suggest a punishment to offset the parole law's application or effect. Appellant's complaint was not incurable error, and was waived by lack of objection. Appellant's first point of error is overruled.

In appellant's second point of error, he contends that his attorney was ineffective in nine specific instances. The constitutional right to counsel does not mean errorless counsel or counsel whose competency is judged by hindsight. *Holland v. State*, 761 S.W.2d 307, 320 (Tex.Crim.App.1988). Rather, the right to effective assistance of counsel means counsel reasonably likely to render reasonably effective assistance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ex parte Cruz*, 739 S.W.2d 53, 57–58 (Tex.Crim.App. 1987). The courts are hesitant to second-guess an action that might have been valid trial strategy at the time, but viewed in hindsight seems to be a mistake. *See Delrio v. State*, 840 S.W.2d 443, 445 (Tex.Crim.App. 1992) (attorney's failure to strike a juror who knew the defendant, and who stated he could not be impartial, was not ineffective assistance of counsel because it might have been trial strategy). Appellant bears the burden of proving the attorney's representation was ineffective and that the challenged action was not trial strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986).

To obtain a reversal because of ineffective assistance, appellant must show:

(1) that counsel's performance was so deficient that counsel was not functioning as the counsel guaranteed by the sixth amendment; and (2) there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The standard of review for effectiveness of counsel is gauged by the totality of the representation of the accused. *Ex parte Cruz,* 739 S.W.2d at 58; *Ex parte Duffy,* 607 S.W.2d 507, 516 (Tex.Crim.App.1980). Merely showing an isolated failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance of counsel. *Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Crim.App.1984).

### Failure to object to references to "organized crime"

■ Appellant contends that a contributing factor to counsel's ineffectiveness was his failure to object to the police officers' testimony that they were assigned to the Harris County Organized Crime Narcotics Task Force. The references to organized crime occurred when three of the testifying officers were questioned about their employment. Each officer indicated which law enforcement agency he was from, and that he was assigned to the task force.

■ Appellant seems to claim that counsel should have objected on rule 403 grounds because the probative value of the jury knowing the witnesses belonged to the Organized Crime Narcotic Task Force was substantially outweighed by the danger of unfair prejudice. *See* TEX.R.CRIM.EVID. 403. However, a trial court can receive information from proper preliminary inquiry into a witness's background to enable the jury to assess the weight to be given the testimony and to evaluate the witness's credibility. *Williams v. State,* 604 S.W.2d 146, 149 (Tex. Crim.App.1980); *Carrillo v. State,* 566 S.W.2d 902, 916 (Tex.Crim.App. [Panel Op.] 1978); *see also Rougeau v. State,* 738 S.W.2d 651, 667 (Tex.Crim.App.1987), *cert. denied,* 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988). The references to the task force were relevant in assessing the credibility of the officers or the weight to be given their testimony, and arose during a proper preliminary inquiry into the witnesses' background. *Carrillo,* 566 S.W.2d at 916. It is possible that the jurors might have linked appellant to organized crime because of these statements; however, appellant has not shown that the possibility of prejudicial inference by the jury substantially outweighs the probative value of the background testimony. In addition, counsel's failure to object could be a sound trial strategy; an objection might serve to draw attention to statements by the witnesses, even with an instruction to disregard.

■ Appellant also claims that his counsel should have filed a motion in limine to exclude this evidence from the jury. The purpose of a motion in limine is to prevent admission of irrelevant, inadmissible, or prejudicial evidence into the trial, but it is not a final ruling on the evidence. *Bifano v. Young,* 665 S.W.2d 536, 541 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Even if counsel had been granted a motion in limine, he could not have prevented the admission of this evidence, because it was proper preliminary inquiry into the witnesses' backgrounds. Failure to urge a motion in limine on this introductory matter was not ineffective assistance of counsel.

Appellant relies on *Dexter v. State,* 544 S.W.2d 426 (Tex.Crim.App.1976), for the proposition that mentioning the witnesses' link to organized crime can entitle appellant to a mistrial. However, in *Dexter,* the prosecutor violated a trial court order when he placed a file cabinet labeled "organized crime" in front of the jury. *Dexter* and this case are not comparable, and appellant's reliance on it is misplaced.

■ Defense counsel also failed to object to the prosecutor's statement in voir dire that he was assigned to the drug task force to prosecute "major narcotics cases," which appellant claims contributed to ineffective assistance of counsel. However, the trial judge informed the jury that the prosecutor was assigned by the district attorney's office to prosecute "cases of this nature." In addition, the indictment and voir dire examination by both prosecutor and defense counsel in-

formed the jury that this case involved delivery of over 400 grams cocaine. On these facts, because the information was cumulative, and because a defense objection to this statement by the prosecutor might have drawn the jury's attention to it, appellant was not prejudiced by his attorney's failure to object. Thus, appellant's counsel's failure to object or to file a motion in limine regarding the witnesses' identification of their employing agency, or to object to the prosecutor's identification of his assignment, did not support constitute ineffective assistance of counsel.

### Failure to object to prosecutor's explanation of a bifurcated trial

■ Appellant acknowledges that the prosecutor is entitled to discuss the range of punishment available, as long as he does not tell the jury that the defendant had been previously convicted. However, appellant claims the prosecutor violated this rule, and his attorney's failure to object contributed to ineffective assistance of counsel. We do not reach the merits of this argument because we find that the prosecutor did not tell the jury about any prior convictions. The prosecutor said:

> If he is found guilty, then we proceed to the second phase of the trial ... You get to hear additional evidence, *if there is any,* to show you what a good person he is, what a bad person he is, if he is an ex-convict, if he is not an ex-convict, if he has ever been in trouble before. You get to hear all that information during the punishment phase.

(Emphasis added.) This statement did not inform the jurors that appellant had prior convictions, and defense counsel's failure to object did not constitute ineffective assistance of counsel.

### Failure to conduct adequate voir dire

■ Appellant relies heavily on *Miles v. State,* 644 S.W.2d 23 (Tex.App.—El Paso 1982, no pet.), for the proposition that failure to ask certain types of questions in voir dire may contribute to a finding of ineffective counsel. *Miles* stated that counsel was normally expected to inquire whether any venire person knew or was related to a witness or the prosecutor, and about the presumption of innocence and willingness to make the State prove its case beyond a reasonable doubt. *Id.* at 24. *Miles* also stated that:

> While it is possible that counsel who ask only the basic questions as noted above may provide a reasonably effective assistance at this beginning stage, one who asks no questions has really provided no assistance.... At times, a short examination may be a good strategy; it may even be very adequate. But, we know of no strategy which permits counsel to waive all questions to a jury panel.

*Id.*

In *Miles,* counsel failed to ask a single question. 644 S.W.2d at 24. Counsel in our case did not specifically ask if anyone knew a witness, but he did ask if anyone was related to an individual in law enforcement. The prosecutor had previously asked if anyone had relatives or friends with prior drug experiences. Although defense counsel did not specifically question the venire on the presumption of innocence, he, the prosecutor, and the judge all questioned the venire on whether they could require the State to prove its case beyond a reasonable doubt. The trial judge had discussed the presumption of innocence with the jury before appellant had the opportunity to do so. Appellant's counsel also asked the venire members if they had any preconceived notions about the delivery of cocaine, if they could distinguish between fact and opinion, and if they could base their decision on the facts rather than giving more weight to the police or to the defendant. The judge and prosecutor both discussed with the jury the defendant's right not to testify. The prosecutor's extensive voir dire included questions about the credibility of police officers, the law of parties, and the range of punishment. Thus, from questions by the trial judge, prosecutor, and himself, defense counsel obtained most of the relevant information he needed to make strikes. Unlike counsel in *Miles,* appellant's counsel did conduct a voir dire examination, although appellant claims it was insufficient.

However, none of the cases appellant cites support the claim that appellant's voir dire examination was inadequate and a factor contributing to ineffective assistance. In two cases appellant cites finding ineffective assistance, defense counsel's voir dire examination angered at least one member of the venire. *Miller v. State,* 728 S.W.2d 133, 134 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd); *San Roman v. State,* 681 S.W.2d 872, 874 (Tex.App.—El Paso 1984, pet. ref'd). In *Miller,* defense counsel's manner was abusive in voir dire and throughout the trial. 728 S.W.2d at 134. In *San Roman,* defense counsel in a rape trial "entered into several peculiarities with regard to sex and love," and additionally failed to question venirepersons on reasonable doubt, burden of proof, whether they were related to individuals in law enforcement, or whether they had been crime victims. 681 S.W.2d at 874. In *Hutchinson v. State,* 663 S.W.2d 610, 614 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd) the appellate court found that the voir dire examination contributed to ineffective assistance of counsel but did not state why. None of these cases support the contention that counsel was ineffective because he did not develop his voir dire as fully as other counsel might have, but merely asked relevant questions.

In *Brown v. State,* 797 S.W.2d 686 (Tex. App.—Houston [14th Dist.] 1990, no pet.), the court found that a voir dire examination that covered only "the relationship of the veniremen to law enforcement personnel, the veniremen's inclination to believe the testimony of police officers over that of non-police witnesses, and the veniremen's ability to presume that the defendant is innocent" was "in no way indicative of ineffective assistance of counsel." *Id.* at 687. Although appellant claims that this case is "readily distinguishable," he does not explain how. Defense counsel in the instant case asked the same questions as were asked in *Brown,* other than about the presumption of innocence. Instead, he asked whether venire members could require the State to prove its case beyond a reasonable doubt. These two cases are thus more similar than dissimilar.

Appellant also argues that defense counsel was incoherent throughout voir dire. Although several statements by appellant's counsel in voir dire seem garbled on the cold appellate record, appellant does not claim that venire members were unable to understand the meaning of counsel's statements. On these facts, defense counsel's voir dire examination was sufficient to preclude a finding of ineffective assistance of counsel on this issue.

**Counsel's understanding of the law of parties**

Appellant alleges that his trial counsel should have questioned venire members concerning the law of parties, and demonstrated in his summation his ignorance of the application of the law of parties. According to appellant, both contributed to his ineffectiveness. In *Ex parte Welborn,* 785 S.W.2d 391 (Tex.Crim.App.1990), the court held that counsel must have a reasonably firm understanding of the law governing a case before he can effectively counsel his client. *Id.* at 393. In *Welborn,* counsel believed his client, who was charged under the law of parties, could not be convicted unless a pharmacist could identify him as the person who had passed a forged prescription. *Id.* Under the law of parties, a defendant may be convicted if he is physically present at the offense and expressly or implicitly encourages the offense. *Id.* Obviously, identification of the defendant as the person who conducted the actual act was not an element of the offense, and counsel's belief in *Welborn* that this was a defense showed a disconcerting lack of knowledge.

In the instant case, however, counsel's defense theory was that appellant had only come over to the apartment to have dinner and knew nothing about the pending drug sale. The people in the apartment were, in fact, cooking on their grill. To obtain a conviction under the law of parties, the State must convince the jury that the defendant encouraged the offense. Thus, if the jury had believed appellant was only visiting the house to have dinner, he would not have been convicted under the law of parties. Appellant has not cited a case where counsel was found ineffective because he did not effective-

ly explain the underlying law, but tried the case under a valid defensive theory. This does not contribute to ineffective assistance of counsel.

**Failure to object to hearsay testimony**

 Appellant contends his trial counsel's failure to object to a specific instance of alleged hearsay is a factor supporting his allegation of ineffective assistance. Detective Caro worked for the special investigation division of the Dallas Sheriff's department of drug enforcement. During direct examination, the prosecutor asked why the witness, who was from Dallas, became involved in the investigation in Houston. The witness stated that he had received information from an informant in Dallas that he, the informant, had purchased cocaine frequently from a residence in Houston.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R.CRIM.EVID. 801(d). The informant's statement was not offered to prove that the informant purchased the cocaine, but to explain why Detective Caro, a Dallas officer, was involved in a drug transaction in Houston. Therefore, an objection to the informant's statement on the grounds of hearsay would be improper, and the failure to object is not a contributing factor to ineffective assistance of counsel.

**Counsel elicited the officer's opinion that appellant brought cocaine to the apartment**

 Appellant contends his counsel was ineffective because he elicited from Officer Caro, on cross-examination, testimony that Caro was sure appellant brought the cocaine to the apartment. Defense counsel's cross-examination of the officer cited as ineffective assistance of counsel is:

Q: Now, did you have an occasion later on to search Mr. Valencia's car?
A: I did not.
Q: Did one of the other officers do that?
A: I'm not sure.
Q: But basically you are saying you don't know whether the cocaine was already at the apartment or brought in by this man?

A: I believe it was brought in by that man.

Q: You believe it but you don't know for sure; is that correct?

A: *I'm sure he brought it in.*

(Emphasis added.)

Appellant cites *Hutchinson,* 663 S.W.2d at 613, for the proposition that cross-examination that bolsters the case against the defendant can contribute to ineffective assistance of counsel. In *Hutchinson,* we found that "[i]t is obvious from the record that appellant's counsel never intended to present any defense to the drug charge." *Id.* The court could not find an instance where the cross-examination challenged the prosecution's witnesses. In that context, the total failure of the defense counsel to challenge the prosecution's case constituted ineffective assistance of counsel. *Id.* This does not mean, however, that counsel is ineffective every time a witness responds in cross-examination in a way that bolsters the prosecution's case. This would place a heavy burden on all attorneys to ask questions of adverse witnesses only if they are sure how the witness will respond. In the case before us, the defense theory was that appellant did not bring the cocaine into the apartment, because he had only come over for dinner. In questioning the witness, counsel was clearly trying to establish that the investigators were uncertain that appellant brought in the cocaine. Unfortunately for appellant, the witnesses stated they were sure about who brought in the bag containing cocaine. This did not contribute to ineffective assistance of counsel.

 In addition, appellant states that a lay witness cannot express his opinion or belief as to the guilt of the parties. *See* TEX.R.CRIM.EVID. 701. However, it is clear from the excerpt that the witness testified only that he was sure that appellant brought in the bag containing cocaine. A lay witness is entitled to testify to opinions and inferences that are rationally based on his perception and helpful to the trier of fact. *See id.* The testimony of the witness was based on the witness' perception and was the proper subject of examination.

### Counsel's summation at the punishment stage was inadequate

 Appellant contends that counsel's summation at the punishment phase was inadequate because he continued to argue appellant's innocence, did not request leniency, and asked the jury to "keep in mind how many kids would have been turned off." When a claim is made of ineffective assistance of counsel at the punishment phase of a non-capital offense trial, this Court is to judge the effectiveness of counsel by a single standard of reasonably effective assistance of counsel. *Ex parte Cruz,* 739 S.W.2d at 57–58. This standard requires a showing of harm due to the alleged ineffective assistance. *Stone v. State,* 751 S.W.2d 579, 582 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

 Appellant's trial counsel indicated to the jury that "[w]hether it would be one year or a hundred years, that's a long time for any man to make a recovery from. So when you are doing your argument or discussing the punishment, make the punishment something that is practical, please." Counsel also stated that he disagreed with the legislature having set a minimum of 15 years. There is sufficient evidence that appellant's counsel argued for leniency.

The statement concerning children and drugs introduced counsel's contention about the root of the drug problem. Counsel's attempt to place the blame for the drug problem on the user, instead of the seller, could be construed as trial strategy aimed at receiving leniency from the jury.

### Counsel was generally incoherent

 Appellant states that his counsel's general incoherence is a factor contributing to ineffective assistance of counsel. Appellant has also alleged this as a factor in several other points, and any discussion of this point would require repetition of prior points. In addition, appellant never claims that the attorney's speech was such that the jury could not understand him. This does not contribute to ineffective assistance of counsel.

### Counsel failed to object when the prosecutor improperly and incorrectly argued that a person could become eligible for parole in two years on a 40–year sentence

Appellant urged in his first point of error, that the prosecutor committed fundamental error in his summation at the punishment hearing by arguing that a person could become eligible for parole in two years on a 40 year sentence. He urges in his second point of error that if we do not find fundamental error, but decide that counsel's failure to object waived consideration of the merits of his complaint, then counsel's omission was a further factor contributing to ineffective assistance of counsel.

We found in deciding point of error one that the prosecutor's argument was not fundamental error, and that because appellant's attorney did not object to the allegedly improper portion of the State's argument, he preserved nothing for review. *Briddle,* 742 S.W.2d at 389; *Urbano,* 760 S.W.2d at 37.

 The prosecutor's hypothetical example—and erroneous mathematical computation—did implicitly invite the jury to consider the parole law in assessing punishment by informing the jury what affect the parole law might have on a 40 year sentence. Tex.Code Crim.P.Ann. art. 37.07, section 4, expressly prohibits the jury from considering the manner in which parole law may be applied to a particular defendant. Counsel should have objected to the prosecutor's argument. Because the other factors appellant claims constituted ineffective assistance of counsel do not support that claim, we hold that counsel's failure to object to the jury argument did not, in and of itself, constitute ineffective assistance of counsel. Instead, it was an isolated omission that did not so affect the outcome of the case as to undermine the reliability of the proceedings. We contrast the fact situation before us with that in *Boyington v. State,* 738 S.W.2d 704, 708–710 (Tex.App.—Houston [1st Dist.] 1985, no pet.), where the prosecutor indirectly invited the jury to consider parole laws *and* committed numerous other errors, cumulatively resulting in our finding of ineffective assistance of counsel.

## Counsel's conduct as trial strategy

In the final point, appellant alleges that counsel's conduct was so consistently bad that it cannot be considered trial strategy. Basically, appellant summarizes his previous claims in this point. However, as discussed previously, many of the objections appellant claims counsel should have made would have been overruled. In addition, appellant argues that the defense theory that appellant had only come to the house to have dinner and did not bring in the cocaine was inconsistent with the law of parties. On the contrary, this theory is a valid defense to the law of parties, because it tends to prove that appellant had no knowledge of and did not encourage a plan to commit a crime, which is required to be proved for a conviction under the law of parties. Other points alleged here are also cumulative of points previously discussed; nothing alleged, other than the failure to object to prosecutor's parole argument, contributed to ineffective assistance of counsel.

## Conclusion

To establish ineffective assistance of counsel, appellant has the burden of proving a reasonable probability exists that, but for the counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068. Appellant is required to show that errors of counsel "actually had an adverse effect on the defense." *Id.* at 693, 104 S.Ct. at 2067.

■ Appellant has alleged that the trial would have been different but has not discussed any specific instances or examples to show that the results of the trial would have been different. Unfortunately for appellant, the evidence elicited by the prosecutor on direct examination was damning. After officers received a tip from an informant, they set up a buy-bust operation. Officer Caro, the person attempting to buy cocaine, entered the apartment where the suspected drug trafficking took place and was told that the cocaine would arrive shortly. The officers who were outside performing surveillance saw appellant arrive carrying a bag under his arm and run to the apartment.

Caro saw appellant enter the apartment carrying a bag, walk into the bedroom, and open it. Caro testified that the contents of the bag looked like several kilos of cocaine. The officers then broke into the apartment. Appellant does not allege that counsel could have prevented the jury from hearing any of this testimony. Most of the allegations appellant makes to support his claim of ineffective assistance of counsel involve collateral issues. Thus, we find that appellant has failed to show that there is a reasonable probability that the outcome of the case would be different. We overrule appellant's second point of error.

We affirm the trial court's judgment.

O'CONNOR, J., dissenting.

O'CONNOR, Justice, dissenting.

I dissent. The appellant did not get a fair trial because he was not represented by effective counsel.[1]

There are two versions of the appellant's role in the events that gave rise to the indictment. The State's evidence was that an undercover officer went to an apartment to purchase cocaine; he discussed the purchase with Hurtado, who made a number of telephone calls; other people were present in the apartment; someone was preparing food on a grill on the patio; about 20 minutes after the last telephone call, the appellant came to the apartment carrying a plastic bag containing four kilos of cocaine; when the officer gave the signal, the other officers made the bust; a number of the people in the apartment tried to escape, but appellant did not; Clodomiro, one of the people who tried to escape, grabbed the cocaine; at the time of the bust, there were nine people in the apartment, more than the officer's making the bust had expected.

The appellant's version was Hurtado sold food in the apartment, that is why the grill was hot and there were so many people there; the appellant was one of the people at the apartment waiting to eat; the appellant did not bring the cocaine to the apartment; Clodomiro, the man who grabbed it and tried

1. On appeal, the appellant was represented by appellate counsel different from his trial counsel.

to escape, is the one who brought the cocaine to the apartment.

### Failure to object to improper and incorrect argument

In point of error one [2], the appellant claims the prosecutor's argument during punishment regarding the application of parole law was fundamental error. In point of error two, the appellant claims he was deprived of effective assistance of counsel because his lawyer did not object to improper and incorrect argument by the prosecutor, among other things.[3] The appellant argues that the prosecutor committed two sins in his argument: (1) he circumvented the court's instruction not to discuss parole; and (2) he made a misstatement of fact and law in his hypothetical explanation of parole law.

During closing arguments of the punishment phase of the trial, the prosecutor argued:

> The charge talks about the award of good conduct time to a prisoner who exhibits good behavior and parole. To caution you right now, first off, you can't guess or estimate anything about good conduct time or parole to this guy. This is for your information, for you to know that whatever the term of years in a case that a defendant gets sentenced to, his time in the penitentiary can be reduced by the award of good conduct time and by parole. They say the formula here as to when he becomes eligible for parole would be when a defendant has his actual time plus his good conduct time added together and they equal one fourth of the sentence. *That means if there is a forty-year sentence, one fourth of that is ten years, and let's say you get three days credit for every one you serve. That's the good conduct time. That means you can effectively become eligible for parole on a forty-year sentence in about two years.* That's the way this reads.

The State concedes that the prosecutor's math was wrong, that a person who receives a 40-year sentence cannot be eligible for parole in two years.

On motion for new trial, appellate counsel called as witnesses the prosecutor and George Tyson, an experienced defense lawyer. Appellate counsel asked the prosecutor if in the argument (quoted above) he was trying to tell the panel how the parole law operated. The prosecutor refused to answer the question until the court instructed him to answer. The prosecutor then admitted he made the argument to attempt to communicate to the jury how the parole law works. When the appellate counsel asked the prosecutor why he told the jury that appellant would become eligible for parole in two years, the prosecutor merely answered that he made the argument as a hypothetical.

By his argument, the prosecutor invited the jury to consider the parole law in assessing punishment by informing the jury what effect the parole law might have on a 40-year sentence. Article 37.07, section 4 of the Texas Code of Criminal Procedure expressly prohibits the jury from considering the manner in which parole law may be applied to a particular defendant. Trial counsel should have objected to the prosecutor's argument.

By his argument, the prosecutor gave the jury erroneous information about how the parole law would apply to a 40-year sentence. It is error for the State to present a statement of the law that is contrary to that presented in the charge to the jury. *Whiting v. State,* 797 S.W.2d 45, 48 (Tex.Crim. App.1990). The prosecutor's miscalculation was intended to, and in all probability, did mislead the jury. Again, trial counsel should have objected.

On this record, we should hold the failure to object to an argument that invites consideration of parole laws, and is a misstatement

---

**2.** On point of error one, which complains about the prosecutor's argument, I agree with the majority that we should overrule it. The error was not fundamental because, if counsel for appellant had objected and asked for an instruction to disregard, it would have cured any jury misconceptions.

**3.** On point of error two, the appellant's argument that his counsel was ineffective is strengthened by our overruling of point of error one—because the error of the argument was not fundamental, it became all the more important for counsel to object.

of the application of the parole laws, is as a matter of law ineffective assistance of counsel. The majority's ruling will encourage prosecutors to misstate the application of the parole law, particularly when a defendant is represented by counsel the prosecutor thinks might not catch the error, often in cases where the trial counsel is appointed.

### Failure to object to references to "organized crime"

The appellant contends his counsel was ineffective during the guilt/innocence stage of the trial because he did not object to the police officers stating they were assigned to the Harris County Organized Crime Narcotic's Task Force. He also contends that counsel should have objected to the prosecutor stating he was assigned to the drug task force and prosecuted "major narcotics cases."

I agree. In *Dexter v. State*, 544 S.W.2d 426, 428 (Tex.Crim.App.1976), the prosecutor, in direct contravention of an expressed order of the trial court, attempted to connect the appellant with "organized crime" throughout the course of the trial. The prosecutor placed a file cabinet with an attached sign that said "organized crime" in front of the jury and argued during closing that the defendant was connected to organized crime. *Id.* at 427. The court held that the conduct of the prosecuting attorney prevented the defendant from receiving a fair and impartial trial. *Id.* at 428.

The references to organized crime in this case arose when three of the testifying officers were questioned about their employment. Each officer identified which law enforcement agency he was from, and that he was assigned to the Organized Crime Narcotic's Task Force.

It was not necessary for the officers to state they were part of Organized Crime Narcotic's Task Force as a preliminary inquiry into their background. The references to the task force were not necessary to assess the credibility of the officers or weight to be given the officers' testimony. The references to the "organized crime task force" served to

connect the appellant with organized crime. Because a connection with organized crime would only prejudice the appellant, I cannot envision any trial strategy that would justify not requesting a motion in limine or objecting to this type of testimony.

### Failure to conduct an adequate voir dire

The appellant contends his counsel was ineffective during voir dire because a reasonably competent counsel in a felony case should ask prospective jurors if they: (a) are willing to apply the presumption of innocence and require the State to meet its burden of proof beyond a reasonable doubt; (b) have ever been the victim of a crime; (c) have any involvement with law enforcement; (d) know the prosecutor or prosecution's witnesses; and, (e) can consider the minimum punishment. I agree.

The appellant's counsel asked only 12 questions on voir dire. Of those questions, five related to irrelevant matters. For example, counsel asked whether any person on the panel was prejudiced against a person from the Heights; whether any panel member knew his wife, his son, his daughter; he asked if any members of the panel were "into heavy rock." Some of his voir dire was simply unintelligible.[4] For example:

> This is what is called a bifurcated trial. First part will be the facts and the second part will be the punishment. *And you really can't find guilty or punish him right or find him not guilty plus I believe it.*
>
> \* \* \* \* \* \*
>
> You hear on television of people saying things like let's hang the guy, give a fair trial and go on. We don't have that in the United States and we don't have that in Texas yet.

At the hearing on the motion for new trial, appellate counsel elicited from the prosecutor the admission that he found it difficult to understand the appellant's trial counsel's pronunciation of his words.

---

4. Trial counsel has Bell's palsy, which produces a temporary facial paralysis, and caused his speech to be impaired. During voir dire he told

the jury panel he could not always control his voice or what he says.

**667**

From Tyson, appellate counsel established that a competent defense counsel should question the panel about its perception of the presumption of innocence, whether any member of the panel or relative had been victim of a crime, whether any member or relative worked for a law enforcement agency, whether any member would give more credibility to the testimony of a police officer than to a private citizen, whether any member of the panel would require the appellant to testify, and whether they could assess the minimum sentence option. In Tyson's opinion, the trial counsel did not conduct a reasonably competent voir dire.

The voir dire process is designed to ensure that an intelligent, alert, disinterested, and impartial jury will perform the duty assigned to it. *Salazar v. State,* 562 S.W.2d 480, 482 (Tex.Crim.App.1978). We should, therefore, vigorously protect the accused's right to a fair trial by a jury untainted by bias or prejudice.

Generally, defendant's counsel is expected to determine if any prospective juror either knew or was related to the prosecutor or any of the State's witnesses. *Miles v. State,* 644 S.W.2d 23, 24 (Tex.App.—El Paso 1982, no pet.). Also, counsel should inquire about the willingness of the jurors to apply the presumption of innocence and their willingness to require the State to meet its burden of proof. *Id.* Merely telling the panel of these provisions of the law without inquiring about the panel giving them full effect does not normally meet expected standards of one who diligently represents his clients. *Id.*

When the defendant elects for the jury to assess punishment, the critical questions for a prosecution involving delivery of narcotics to an undercover officer concern the relationship between venire persons and law enforcement personnel, a venire person's inclination to believe the testimony of police officers over that of non-police witnesses, and the venire person's ability to presume that the defendant is innocent. *Brown v. State,* 797 S.W.2d 686, 687 (Tex.App.—Houston [14th Dist.] 1990, no pet.).

I would hold that the appellant was deprived of a fair voir dire.

## Incoherent counsel

The appellant contends his counsel was ineffective throughout the trial because his counsel gave incoherent and irrelevant explanations to the venire members on the war on drugs, reasonable doubt, and on the bifurcated trial system. He further asserts that counsel failed to conduct a meaningful cross-examination of any witness.

During the trial, the appellant's counsel made some confusing statements. During trial, trial counsel made the following objection,

> Your honor, I object to anything of number 15 [a photograph of the appellant and other defendants] which is the picture of my client as such as on trial because everything we are doing to other people and yet this man has not been shown to do anything and to introduce any of these felons would be not only—it's prejudicial to my case in defense of this man. I object to all the pictures.

> The Court: You are saying irrelevant to these other people that are there?

> Counsel: No, sir. I say prejudicial. That all these people have either gone to trial or pled guilty and that to introduce what they did back in from of this jury to this man is not making a fair trial for this man.

There is no evidence in the record that counsel attempted to obtain substitute counsel or ask for a continuance until such time that he could speak clearly. The disciplinary rules state that a lawyer should withdraw from a case if his physical condition materially impairs the lawyer's fitness to represent his client. SUPREME COURT OF TEXAS, STATE BAR RULES art. 10, § 9 (Texas Disciplinary Rules of Professional Conduct) Rule 1.15(a)(2) (1989) (located in the pocket part for Volume 3 of the Texas Government Code in title 2, subtitle G app., following § 83.006 of the Government Code). The prosecutor admitted that counsel was difficult to understand; therefore, it was likely that the jury had difficulty understanding counsel. The disciplinary rules recognize that there comes a time when counsel should withdraw because his impairment affects his ability to represent his client. I would hold the trial

lawyer's speech impairment contributed to his ineffective assistance as counsel for the appellant.

### Counsel's summation at the punishment stage was inadequate

The appellant contends that counsel's summation at the punishment phase was inadequate because he continued to argue the appellant's innocence, did not request leniency, and, he asked the jury to "keep in mind how many kids would have been turned off." When a claim is made of ineffective assistance of counsel at the punishment phase of a non-capital offense trial, this Court is to judge the effectiveness of counsel by a single standard of reasonably effective assistance of counsel. *Ex parte Cruz,* 739 S.W.2d 53, 57–58 (Tex.Crim.App.1987). This standard requires a showing of harm due to the ineffective assistance. *Stone v. State,* 751 S.W.2d 579, 582–83 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

> The appellant's trial counsel told the jury, Whether it would be one year or a hundred years, that's a long time for any man of to make a recovery from. So when you are doing your argument or discussing the punishment, make the punishment something that is practical, please.

The appellant also stated that he disagreed with the legislature's assessment of 15 years.

### Conclusion

Counsel's conduct during most of the trial was ineffective. *Stickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ex parte Cruz,* 739 S.W.2d at 57–58. Counsel's failure to conduct an adequate voir dire, his failure to request a motion in limine, his failure to object to references to organized crime, his failure to object to the State's discussion of the parole law, his failure to object to the State's misstatement of the application of the parole law, compounded by his speech impairment, in light of his total representation, resulted in ineffective assistance of counsel to the appellant. The appellant's trial counsel's performance was so deficient that it violated his Sixth Amendment right to counsel. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

I would sustain point of error two, reverse the judgment of the trial court, and remand for a new trial.