James Bledsoe, Jr. v. State of Texas
















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-204-CR

     JAMES BLEDSOE, JR.,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 98-859-C
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Convicted of aggravated sexual assault as an habitual offender and sentenced to life in prison,
James Bledsoe, Jr. filed a notice of appeal. See Tex. Pen. Code Ann. §§ 12.42, 22.012 (Vernon
Supp. 2001); Tex. Code Crim. Proc. Ann. art. 44.02 (Vernon 1979). After multiple extensions
of time to file a brief were granted to his attorney, we abated the appeal on December 22, 1999,
to allow the trial court to ascertain the cause for the delay. Counsel filed a motion to withdraw
on January 10, 2000, which the trial court granted. By order dated January 25, 2000, the court
appointed another attorney to represent Bledsoe.
      The brief poses a single issue:
Did appellant's attorney render reasonably effective assistance of counsel where he failed
to preemptorily strike two jurors who indicated a bias in favor of the state, failed to
meaningfully voir dire the jury panel, allowed the state to elicit hearsay testimony and ask
leading questions, and generally evidenced a lack of understanding of the facts of the case and
the applicable law?

FACTS OF THE OFFENSE
      The facts of this case are emotionally charged. Bledsoe is charged with sexually assaulting
his fourteen-year-old stepdaughter. In fact, the director of a DNA laboratory testified that, in his
opinion, DNA testing shows that Bledsoe is the father of a child born to her. Bledsoe testified and
denied the allegations. The victim testified and denied having sex with Bledsoe. Her mother,
Bledsoe's wife, denied any knowledge of a relationship between the victim and Bledsoe. Two
witnesses, who had visited in the home shortly after the child was born, testified that Bledsoe
admitted to having sex with the victim on one occasion. Bledsoe denied making such a statement
to those witnesses. After the jury found him guilty, Bledsoe pled true to the enhancement
allegations. The jury assessed life in prison and a $10,000 fine.
THE ISSUE
      Bledsoe breaks the issue of the performance of his trial counsel into several assertions of
ineffectiveness. First, however, we address the standard of review for such claims.
      standard of review
      Due process and the right to a fair trial include a guarantee of assistance of counsel. Thomas
v. State, 550 S.W.2d 65, 67 (Tex. Crim. App. 1977). A conviction had with the attorney
rendering ineffective assistance is constitutionally infirm. Strickland v. Washington, 466 U.S.
668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Ex parte Dietzman, 851 S.W.2d 304, 305 (Tex.
Crim. App. 1993). 
      To prevail on this claim, Bledsoe must meet the two-pronged test used to analyze claims of
ineffective assistance of counsel. See Strickland, 466 U.S. at 690, 104 S.Ct. at 2066; Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, he must show that his trial counsel's
performance was so deficient, because he made errors of such a serious nature, that his assistance
fell below an objective standard of reasonableness. Thompson, 9 S.W.3d at 812. Second,
assuming he can demonstrate deficient assistance, he must affirmatively prove prejudice. Id. He
must show a reasonable probability that, but for his counsel's unprofessional errors, the result of
the proceeding would have been different. Id. A reasonable probability is a probability sufficient
to undermine confidence in the outcome. Id. He bears the burden of proving by a preponderance
of the evidence that his counsel was ineffective. Id. at 813.
      The assessment of whether a defendant received effective assistance of counsel must be made
according to the facts of each case. Id. An allegation of ineffectiveness must be firmly founded
in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. Id. 
Failure to make the required showing of either deficient performance or sufficient prejudice
defeats the ineffectiveness claim. Id.
      There is a strong presumption that counsel's conduct fell within the wide range of reasonable
professional assistance. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Stated
another way: Counsel's competence is presumed and the party asserting ineffective assistance must
rebut this presumption by proving that his attorney's representation was unreasonable under
prevailing professional norms and that the challenged action was not sound trial strategy. Stafford
v. State, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). The fact that another attorney might have
pursued a different course of action or tried the case differently will not support a finding of
ineffective assistance of counsel. Id.
      The Strickland standard applies to all claims of ineffective assistance of counsel whether
arising from guilt-innocence or punishment. Hernandez v. State, 988 S.W.2d 770, 772-73 (Tex.
Crim. App. 1999) (overruling Ex parte Duffy, 607 S.W.2d 507 (Tex. Crim. App. 1980), which
applied a different standard to claims of ineffective assistance of counsel at the punishment phase).
      With these standards in mind, we turn to the specific assertions of counsel's ineptitude.
      failure to challenge two juror for bias
      Bledsoe contends that counsel's problems “began in voir dire.” Counsel was questioning
prospective jurors about the law that minors cannot give consent. Juror Hammonds, when asked
if he thought it was a “good law,” responded, “You bet. Hang him.” Counsel went on to other
jurors, did not further question Hammonds about his response, and did not challenge him for
“cause.” Hammonds served on the jury. Bledsoe urges that Hammond's response shows that he
was predisposed towards the maximum punishment.
      Prospective jurors were questioned about DNA evidence and expert witnesses. Juror Muhl
said that he would “give credibility to the DNA because of the facts and because of the
percentages.” Bledsoe urges that counsel should have questioned Muhl further, challenged him
for cause, or exercised a preemptory strike against him because of the importance of DNA
evidence in the case and because Muhl was the only juror to express that opinion. Muhl also
served on the jury.
      failure to meaningfully question all prospective jurors
      Bledsoe points to the twenty pages of the reporter's record that encompass counsel's entire
examination of the jury panel and contrasts that with forty pages of examination by the State. 
Specifically, he says that counsel: failed to adequately question about the State's burden of proof;
failed to adequately question about the use of expert witnesses and the reliability of DNA
evidence, knowing that DNA evidence was to be offered (only three jurors questioned); failed to
properly discuss or question about a defendant who testifies, while discussing a defendant's right
not to testify, knowing that Bledsoe would probably testify; and failed to discuss or question about
punishment options. He acknowledges that counsel covered topics such as relationships to law
enforcement personnel and Child Protective Services (CPS), encounters with CPS, ability to
evaluate credibility of experts and other witnesses, ability to evaluate DNA evidence, and prior
jury service and involvement in criminal proceedings.
      Bledsoe points to cases like Winn v. State, where the Corpus Christi Court found “cursory”
questioning to be deficient, and San Roman v. State, where the El Paso Court found
ineffectiveness for failure to conduct a meaningful voir dire examination. Winn v. State, 871
S.W.2d 756 (Tex. App.—Corpus Christi 1993, no pet.); San Roman v. State, 681 S.W.2d 872
(Tex. App.—El Paso 1984, pet. ref'd).
      failure to seek expert assistance
      Counsel's next deficiency, according to Bledsoe, was his failure to request appointment of an
expert to assist him with the DNA evidence. Because, he says, the case was “entirely” based on
DNA evidence, he was essentially left without a defense. He maintains that under Taylor v. State,
the court would have been required to appoint an expert. Taylor v. State, 939 S.W.2d 148 (Tex.
Crim. App. 1996).
      failure to object to leading questions and hearsay
      As we have noted, Bledsoe's wife, Roxanna, testified at trial. Bledsoe says that her entire
examination is nothing more than a “litany of leading questions” through which the prosecutor
essentially testified. He also complains that counsel did not object to questions directed to another
witness, who said that Roxanna admitted to her that Bledsoe had sex with the victim one time. 
He maintains that this testimony could have been excluded with a proper objection.
      failure to address a void conviction used for enhancement
      A 1988 conviction was used to enhance punishment. Bledsoe contends that the “pen packet”
(a compilation of certified documents used to establish the prior conviction) contains an indictment
for the offense of theft whereas the order granting probation and the order revoking probation both
recite that the conviction was for the offense of burglary of a habitation. He says counsel should
have filed a motion to quash the indictment or otherwise called the discrepancy to the trial court's
attention.
      failure to obtain a grasp of the facts and applicable law
      Bledsoe questions his counsel's approach to his own direct examination. He says that counsel,
although attempting to soften the effect of his prior convictions, failed to question him about all
of the convictions, thus leaving the prosecution room to bring forward an additional conviction
and cast additional doubt on his credibility.
      He also asserts:
      •    counsel did not file an election to have the jury assess punishment although the trial
judge, during voir dire, advised him to do so.
      •    counsel failed to object to evidence of extraneous offenses contained within various
papers in one of the “pen packets” admitted into evidence.
      •    counsel failed to object to the assessment of both life imprisonment and a fine. The court
deleted the fine on its own.
Although Bledsoe concedes that none of these, standing alone, would establish the ineffectiveness
of his counsel, he urges that they cumulatively undermine confidence in the outcome of the trial.
THE STRICKLAND STANDARD APPLIED
      As we have noted, Bledsoe must show that his trial counsel's performance was so deficient,
because he made errors of such a serious nature, that he was not functioning as the "counsel"
guaranteed by the Sixth Amendment, and that the deficient performance so prejudiced his defense
that he was deprived of a fair trial, i.e., that there is a reasonable probability that, but for his
counsel's unprofessional errors, the result of the proceeding would have been different. 
Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.
      This is one of those cases which demonstrate the frustration of reviewing the effectiveness of
counsel without development of the record. Ex parte Torres, 943 S.W.2d 469, 475 (Tex. Crim.
App. 1997) ("In most cases, the record on direct appeal is inadequate to develop an ineffective
assistance claim."); Gonzalez v. State, 994 S.W.2d 369, 373 (Tex. App.—Waco 1999, no pet.)
(without an evidentiary record, review of most complaints of this nature is a waste of valuable
judicial resources). For example, we cannot ascertain why counsel did not question either juror
Hammonds about his statement, “Hang him,” or juror Muhl about his views on DNA evidence. 
We cannot know what led counsel to ask certain questions of the jury and not others that appear
to go to the heart of a possible defense. We do not know whether counsel considered and rejected
the idea of requesting expert assistance with the DNA evidence or never considered it at all. We
do not know if there was a strategic reason to allow the State to examine Roxanne the way it did. 
We do not know to what extent counsel prepared himself with respect to the facts and the
applicable law. And finally, we have no information about counsel's expertise in the field of
criminal law nor his experience in handling criminal matters, particularly matters in which
possible life imprisonment is at stake.



      Our review of the entire record convinces us that Bledsoe has not overcome the “strong
presumption” that counsel's conduct fell within the wide range of reasonable professional
assistance. Tong, 25 S.W.3d at 712. The deficiencies Bledsoe complains of are not firmly
founded in the record before us. Thompson, 9 S.W.3d at 813. Counsel filed many pre-trial
motions, including motions to reduce bond, to arraign outside the jury's presence, to discover
favorable witnesses and for a witness list, for production of witness-statements, to discover the
criminal records of witnesses, for production and inspection of evidence and to interview
witnesses, and to discover the records of CPS. He conducted a voir dire examination, made an
opening statement, objected to testimony during trial, cross-examined witnesses, and examined
Bledsoe outside the jury's presence about his right to remain silent. Faced with emotionally-charged facts, he argued against the DNA evidence and in favor of Bledsoe's version of the facts. 
He argued at the punishment phase for a sentence in the lower range of punishment. Based on this
record, we do not find that Bledsoe has shown by a preponderance of the evidence that counsel's
overall performance was so deficient, because of serious errors, that his assistance fell below an
objective standard of reasonableness. Id.
      Finding that Bledsoe has failed to overcome the strong presumption that his counsel rendered
effective assistance, we affirm the judgment.



 
                                                                       BILL VANCE
                                                                       Justice

Before Chief Justice Davis,
          Justice Vance, and
          Justice Gray
Affirmed
Opinion delivered and filed April 25, 2001
Do not publish