**Charles Eugene CLARK, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–96–359–CR.**

Court of Appeals of Texas,
Fort Worth.

June 5, 1997.

Rehearing Overruled July 10, 1997.

---

Allan K. Butcher, Allan K. Butcher, Jr., Hill, Beatty, Butcher & Gallagher, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles Mallin, David M. Curl, Alan Levy, Assistant Criminal District Attorneys, for State.

Before LIVINGSTON, RICHARDS and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

Appellant Charles Eugene Clark was charged with capital murder for shooting and killing a convenience store clerk during a robbery. The jury found Appellant guilty, and he was automatically sentenced to life in prison because the State had not sought the

death penalty. His appeal challenges (1) the State's voir dire, (2) the trial court's refusal to grant a mistrial during the State's closing argument, (3) the court's refusal to let the jury consider a co-defendant's statement about the crime, and (4) testimony by the State's expert about matters on which he allegedly was not qualified. Finding no reversible error, we affirm.

### The Motion in Limine

The Legislature has not authorized courts to instruct juries about how parole laws relate to the offense of capital murder. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07 § 4 (Vernon Supp.1997); *Valencia v.* State, 891 S.W.2d 652, 658 (Tex.App.—Houston [1st Dist.] 1993), *rev'd on other* grounds, 946 S.W.2d 81 (Tex.Crim.App. 1997) (op. on reh'g). Before the voir dire began, Appellant sought a motion in limine to prevent the State from informing the prospective jurors during voir dire, or the seated jury during the guilt-innocence phase of trial, about the effect of parole laws. The court denied the motion in limine but immediately allowed Appellant to change the title of the motion and file it in the record as an objection, simply called "Objection to State's Voir Dire # 1."

### Negating the Death Penalty

At the start of voir dire, the court told the jury panel that:

[T]he Defendant is charged with the offense of capital murder and this is a criminal case that will be tried before a jury of 12 that will be selected from your number.

The duty of the jurors will be to decide the guilt or innocence of the Defendant. Now, capital murder is punishable in Texas—there are two possible punishments for someone found guilty of the offense of capital murder.

Of course, if a defendant is found not guilty, then obviously there would be no punishment. But if a person is found guilty of the offense of capital murder, there are two possible punishments under the law, life in prison or the death penalty.

*In this particular case, the State of Texas through its prosecutors has decid-*

*ed to not seek the death penalty. So if this Defendant is found guilty of capital murder, the jury will not be called upon to assess punishment because there is only one punishment possible and that is life in prison and that will be done by the court.*

Again, if the Defendant is found not guilty, obviously there would be no punishment assessed. [Emphasis added.]

### The State's Voir Dire

The prosecutor's presentation during voir dire included these comments:

If you find the Defendant guilty of capital murder, there will be no punishment phase at all. The Defendant will be sentenced to a life term in the Institutional Division, which is the prison system, okay?

However, if the jury were to find the Defendant guilty of *a lesser offense of murder,* there is a range that goes with that. . . . [Emphasis added.]

He told the prospective jurors about a jury's role in punishing a defendant for the offense of "felony murder," and the instructions that a court could give about parole laws applicable to that offense. He referred to felony murder as "plain murder" and also described it as "a lesser offense of murder."

Appellant objected "on Written Objection No. 1 previously filed with the Court." That document includes this:

The only purpose that the prosecutor could have for informing the jury concerning the Defendant's parole eligibility in the event he is acquitted of capital murder but convicted of a lesser included offense, would be to prejudice the jury and invite them to convict Defendant of capital murder so as to deprive him of an earlier parole eligibility date than that granted convicted capital murderers.

The parole eligibility date, in the event Defendant is convicted of a lesser included offense, has no '*tendency to make the existence of any fact that is of consequence to the determination of [Defendant's guilt or innocence] more probable or less probable than it would be without the evidence.*' Rule 401, Tex.R.Crim. Ev.

Appellant's first point of error asserts that the court erred by overruling Appellant's objection to the prosecutor's voir dire comments about parole. Appellant contends that the prosecutor's remarks may have swayed the jury to find him guilty of capital murder rather than the lesser included offense of murder, even though the punishment for either offense in this case is a life sentence.

■ The State counters that the jury was instructed in the court's charge that if there is a reasonable doubt from the evidence that Appellant is guilty of capital murder, then the jury should consider whether he is guilty of murder, a lesser included offense. Appellant does not challenge the propriety of the instruction about the lesser included offense, and the State is entitled in a capital murder case to voir dire on the parole law applicable to the lesser included offense of murder. *See Soria v. State*, 933 S.W.2d 46, 64 (Tex.Crim. App.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2414, 179 L.Ed.2d 138 (1997); *Ransom v. State*, 920 S.W.2d 288, 298 (Tex.Crim.App. 1994) (op. on reh'g), *cert. denied*, —— U.S. ——, 117 S.Ct. 587, 136 L.Ed.2d 516 (1996); *Jones v. State*, 843 S.W.2d 487, 498 (Tex. Crim.App.1992), *cert. denied*, 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993).

Accordingly, the court did not abuse its discretion by overruling Appellant's objections to the prosecutor's comments during voir dire about parole laws affecting the lesser included offense of murder. The prosecutor made no comments about parole laws in the context of capital murder. We overrule the first point of error.

### No Improper Argument

During the State's rebuttal at closing arguments, the prosecutor told the jury that this case "is about a man who is dead. And he is dead because ... [Appellant] was at his work doing what he normally does." The court sustained Appellant's objection that the prosecutor was arguing matters outside the record. The court instructed the jury to disregard the prosecutor's statement, but denied Appellant's motion for a mistrial.

■ The second point of error asserts that the trial court erred by denying a mistrial, and Appellant argues that the prosecutor's statement let the jury draw the inference that killing is what Appellant normally does. However, as soon as the court denied the motion for mistrial, the prosecutor made this explanation to the jury:

> The reason I say that, [about Appellant doing what he normally does] we know he wasn't working. We know he wasn't working. He didn't have a job. And his father said he wouldn't have loaned him this sawed-off shotgun.

Although Appellant suggests that the objected-to statement may have been interpreted by the jury as an argument that Appellant normally shoots and kills people, it is equally plausible that the jury would infer only that Appellant "normally" goes out and robs convenience stores. Considering the statement's ambiguity, and the prosecutor's prompt explanation to the jury, we conclude that the statement he made was not so emotionally inflammatory that it would have prejudiced the jury against Appellant despite the trial court's curative instruction. *See Bauder v. State*, 921 S.W.2d 696, 698 (Tex.Crim.App. 1996); *Waldo v. State*, 746 S.W.2d 750, 754 (Tex.Crim.App.1988). We overrule the second point of error.

### The Co–Defendant's Statement

Appellant conceded at trial that he planned and carried out the robbery of the convenience store. Outside the jury's presence, Appellant called his indicted codefendant, Richard Taylor, as a witness. Although Taylor's separate trial for capital murder was still pending, Appellant wanted Taylor's testimony to support the defensive theory that Appellant did not intend to shoot the store clerk, and that the gun Appellant held in the robbery fired only because the clerk grabbed it. Taylor refused to testify, claiming his right against self-incrimination under the Fifth Amendment to the United States Constitution.

As a substitute for live testimony from Taylor, Appellant tried to introduce for the jury's consideration a videotape and transcript of the statement Taylor had given police earlier. The court sustained the State's objection to that evidence on grounds

of hearsay and ruled that Taylor would not be called as a witness in the case. Appellant's third point of error challenges the trial court's refusal to admit the videotape and transcript as evidence.

■ Appellant told the trial court that because he admitted all the elements of the offense, the sole disputed issue was whether Appellant intended to shoot the clerk or whether the gun fired only because the clerk grabbed it. Appellant argued that Taylor's statement to police after his arrest tended to subject Taylor to criminal liability and therefore qualified for admission into evidence as a statement against interest, an exception to the rule against hearsay. *See* Tex.R.Crim. Evid. 803(24). The precise purpose for which Appellant offered the Taylor statement was to support Appellant's defense that the shooting was unintentional. Because Appellant offered the entire statement for the jury to consider on the narrow issue of his intent, the State countered that the statement did not qualify as a statement-against-interest exception to the hearsay rule. We agree. The State labels Appellant's offer as an "en masse" offer because it did not identify or isolate the specific portions of the videotape or the 20–page written statement that Appellant argues were self-inculpatory to Taylor while supporting Appellant's defense that he did not intend to shoot the clerk. The court's exclusion of that offer was not an abuse of discretion. *See Jones*, 843 S.W.2d at 492–93.

■ A court may not just assume that a statement is self-inculpatory merely because it is part of a fuller confession. *See Williamson v. United States*, 512 U.S. 594, 599–600, 114 S.Ct. 2431, 2435, 129 L.Ed.2d 476, 483 (1994). The standard of review of the trial court's decision to exclude a hearsay statement under Rule 803(24) is whether the trial court abused its discretion. *See Cunningham v. State*, 877 S.W.2d 310, 313 (Tex.Crim. App.1994). We find no abuse of discretion here, because Taylor's statement describing the clerk's struggle for Appellant's gun was not a statement against Taylor's interest on the issue of either Appellant's or Taylor's intent to shoot the clerk.

■ Appellant also asked the trial court to admit the Taylor statement on the ground that Taylor was "unavailable" to the defense because of the court's refusal to require Taylor to testify once he claimed the Fifth Amendment privilege against self-incrimination. *See* Tex.R.Crim. Evid. 804(a)(1). Indeed, Taylor was "unavailable" within the meaning of Rule 804(a)(1). *See Castro v. State*, 914 S.W.2d 159, 163 (Tex.App.—San Antonio 1995, pet. ref'd). But a trial court's exclusion of testimony offered under Rule 804 is an abuse of discretion only if the decision to exclude is outside the zone of reasonable disagreement. *See Kelly v. State*, 824 S.W.2d 568, 574 (Tex.Crim.App.1992); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g); *Reyes v. State*, 845 S.W.2d 328, 330 (Tex.App.—El Paso 1992, no pet.) (involving former testimony by an unavailable witness).

■ We have found no cases under Rule 804 involving an indicted co-defendant who has claimed the protection of the Fifth Amendment in another's trial while his own trial is still pending. But, even though a witness becomes "unavailable" in the context of Rule 804 by claiming the Fifth Amendment's privilege against self-incrimination, it appears reasonable that a trial court honoring the privilege has the sound discretion to afford the amendment's protection not only to the claimant's live testimony, but also to the claimant's videotaped or written statements on the same subject matter. We conclude that, having already honored Taylor's claim under the Fifth Amendment, the trial court did not abuse its discretion by excluding the videotaped and written statement made by Taylor to police while under arrest. At the least, the trial court's decision on the matter is within the zone of reasonable disagreement. We overrule the third point of error.

### The Expert Witness

Under the fourth point of error, Appellant contends that the trial court erred by allowing Deputy Medical Examiner Marc Krouse to state his conclusions about the distance between the gun and the store clerk at the time the clerk was shot. The doctor testified

about shotgun wounds and the powder tattoo that may exist around them. He related his medical training and experience in post mortem examinations. He told the jury he had seen several hundred shotgun wounds, had medical training about such wounds, and that he owned a shotgun.

Dr. Krouse testified that "outliner pellets" found on the body reflected "the mass of shot beginning to open up into a pattern after it has exited the muzzle of the weapon and traveled a distance down range." He told the jury that the range of fire is reflected in small wounds outside the major wound. Then the prosecutor asked, "as a medical examiner, are you able to tell us just in general terms what your best estimate would be on the distance the muzzle was from [the store clerk's] chest at the time that the wound was inflicted?" Appellant objected that the doctor had not been qualified as a firearms expert nor in the testing of firearms and patterns of shotgun wounds. The court overruled the objection, and the doctor continued to relate his conclusions about the distance. He answered twenty-one additional questions without objection, testifying about the weapon used to kill the clerk, its ammunition, the weapon's "choke," and the shot patterns. Twice he estimated that the distance between the gun's muzzle and the store clerk was from five to twelve feet. Later, during cross-examination by Appellant, the doctor reconfirmed that estimate of distance.

By not objecting each time Dr. Krouse testified about the conclusions he drew about the distance between the gun and the victim, based on the doctor's analysis of the wounds, Appellant did not preserve the error asserted in the fourth point. *See Ethington v. State,* 819 S.W.2d 854, 858 (Tex. Crim.App.1991); TEX.R.APP. P. 52(a), (b). We overrule point of error number four.

### Conclusion

We have carefully considered and overruled all points of error. The trial court judgment is affirmed.