**Willie Lewis HARRELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–90–00988–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 2, 1992.

Rehearing Denied July 30, 1992.

Renato Santos, Houston, for appellant.
Julie Klibert, Houston, for appellee.

Before BROWN, C.J.; and SEARS and ELLIS, JJ.

## OPINION

SEARS, Justice.

Willie Lewis Harrell brings this appeal from a conviction for theft. Appellant pled not guilty and the case was tried before a jury. Having found appellant guilty, punishment was assessed at five years confinement with a $10,000.00 fine. We affirm.

Quincy Maxey shot and killed his wife Edith Maxey. Quincy subsequently executed a power of attorney authorizing his daughter Diann Maxey to receive any sums belonging to him, and he relinquished his interest in any insurance policies on his wife. After Edith's death, the Maxey children consulted appellant to be their financial advisor and handle their mother's estate. Appellant, who is not an attorney, told the children he would handle the estate and that he would charge a maximum of five percent as fees. Appellant consulted an attorney and was appointed as administrator of Edith Maxey's estate.

Once named the administrator, appellant received monies on behalf of the estate, including two insurance checks totalling $408,000.00. Appellant also received money from pension and profit sharing plans and made disbursements to the children in varying amounts. Renea Maxey received a $55,000.00 disbursement, from which she paid $35,000.00 to appellant's company, Equibuild, as a down payment on the construction of a new house. However, only the foundation and frame work were completed. The thirty-five thousand dollars was never returned to Renea and appellant kept title and possession of the lot.

Diann Maxey also arranged for money to be deducted from her share to cover the costs of a down payment on a new house, as well as for remodeling work to be done on her mother's house. Appellant deducted approximately $17,000.00 from Diann's share for remodeling costs, however, the contractor doing the work was only paid $8,000.00.

Craig Maxey also testified that he received $42,200.00, and that appellant kept an additional $14,800.00 for taxes. However, there are no records of any taxes having been paid. Craig, Diann, and Renea, the only children appearing at trial, testified that they still did not know the full extent of their parents' estate. They also testified that appellant did not have consent to use any of their money to conduct his business, or use it for his personal expenditures.

Appellant testified that he negotiated separate contracts with complainants providing for a fee of $45.00 per hour, although the children deny such an agreement. Contrary to appellant's testimony, Diann Testified that she never agreed to appellant's alleged fee of $45.00 per hour or a $10,000.00 flat rate. Appellant also stated that he performed 5,000 hours of work on Maxey affairs, but only billed them for 3,900 hours, for a total fee of $175,000.00.

Bank records reflected that $479,288.59 was collected for the Maxey estate from which the beneficiaries received $189,537.24. Appellant signed eighty-three checks made payable to himself, for a total of $170,028.39. Appellant used the remainder of the estate money to pay office expenses and personal expenses, such as remodeling costs on his house and salaries to his wife and daughter. Appellant retained sixty percent of the estate for his own use and benefit.

Appellant asserts in his first three points of error that the evidence is insufficient to support a conviction of theft. Specifically, appellant contends in his first point of error that the evidence was insufficient to show that complainants had a greater right to possession of the money as alleged in the indictment.

 Theft is defined as the unlawful appropriation of property with the intent to deprive the owner of the use and benefit of the property. TEX.PENAL CODE ANN. § 31.03(a) (Vernon 1989). An owner is defined as someone having title, possession, or a greater right to possession of the property than the actor. TEX.PENAL CODE ANN.

§ 1.07(a)(24) (Vernon 1974). Proof of management alone is insufficient to sustain ownership allegation. *Freeman v. State,* 707 S.W.2d 597, 603 (Tex.Crim.App.1986). When a fiduciary acts in a manner inconsistent with his lawful authority, for the purpose of permanently depriving the owner of property, then he has committed theft. *Id.* at 605–06.

■ As an administrator of the estate, appellant had authority limited to collecting and distributing estate assets to the beneficiaries. The complainants always had title to the property, appellant's rights were only possessory. Appellant's actions in paying monies to himself and to his family were inconsistent with his lawful authority, and a rational trier of fact could find beyond a reasonable doubt that appellant intended to deprive the complainants of the property.

Appellant also contends that the State was required to prove what was alleged in the indictment, eighty-three checks written with an aggregate total of more than twenty thousand dollars. The indictment charged appellant with appropriation of money in an *aggregate* amount of more than twenty thousand dollars pursuant to one scheme and continuing course of conduct. The State alleged eighty-three checks made payable to appellant as support for the continuing course of conduct theory.

■ The State need only prove an aggregated value where there is alleged one scheme or continuing course of conduct. TEX. PENAL CODE ANN. § 31.09 (Vernon 1974). The State is not required to prove each individual theft. It is sufficient if the State shows enough of the property was stolen to meet the aggregated value allegation. *Lehman v. State,* 792 S.W.2d 82, 85 (Tex.Crim.App.1990).

■ As stated above, appellant retained roughly sixty percent of the $479,288.59 estate. He was only entitled to five percent. The remainder of the estate was either disbursed as checks payable to appellant ($170,028.39), or paid out to others for personal and office expenses incurred by appellant. A rational juror could find beyond a reasonable doubt that more than $20,000.00 had been unlawfully appropriated, and that the appropriation was without the effective consent of the owners. Point of error one is overruled.

■ Appellant asserts in his second point of error that the evidence was insufficient to show that appellant appropriated the money without the effective consent of the complainants. Appropriation of property is without the owner's effective consent if either (1) it is without his assent in fact or (2) his assent in fact is rendered ineffective by various circumstances including deception. *Thomas v. State,* 753 S.W.2d 688, 692 (Tex.Crim.App.1988). The evidence shows that appellant used estate money for his personal benefit even though the complainants were the beneficiaries of the estate. The complainants testified they did not give their effective consent for appellant to appropriate monies for his own benefit. Appellant's testimony that he was entitled to $45.00 an hour also did not establish that there was an independent contract so as to make this a civil dispute rather than a criminal offense. Point of error two is overruled.

■ In his third point of error appellant contends the evidence was insufficient to show that appellant knew that the appropriation was without complainants' consent. A conviction for embezzlement will be affirmed where it is shown that the defendant did not make an honest distribution of the entrusted funds. *Smith v. State,* 468 S.W.2d 828, 829 (Tex.Crim.App. 1971). The testimony of complainants reflects that they never agreed that appellant could keep more than five percent of the estate as administrator's fees. A rational trier of fact could have found beyond a reasonable doubt that the appellant knew that his retention of sixty percent of the estate was unauthorized. Appellant's third point of error is overruled.

■ In appellant's fourth and fifth points of error, he contends that the trial court erred by instructing the jury as to good conduct time and parole, and violated his rights under article I, sections 13 & 19

of the Texas Constitution, and under the fifth and fourteenth amendments to the United States Constitutions. Appellant asserts that although the constitutional amendment allows an instruction on the effects of parole and good conduct time, it did not address the due course of law concerns. Further, he argues that all powers of government are still subject to the Bill of Rights.

At the punishment phase, the trial court instructed the jury as to the existence of parole eligibility and good conduct time and instructed them as follows:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by the particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

Appellant urges this case is governed by the holding in *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1987). In *Rose*, the Court held that article 37.07 violated a defendant's right to due course of law, and that considering parole in assessing punishment was to be avoided. *Id.* at 535.

In 1989, Texas voters approved a constitutional amendment providing:

> The Legislature shall by law establish a Board of Pardons and Paroles and shall require it to keep record of its actions and the reasons for its actions. The Legislature shall have authority to enact parole laws and laws that require or permit courts to inform juries about the effect of good conduct time and eligibility for parole or mandatory supervision on the period of incarceration served by a defendant convicted of a criminal offense.

TEX. CONST. art. IV, § 11(a). Article 37.07 was reenacted effective November 7, 1989 and now meets the constitutional requirements of article IV, Section 11(a). TEX. CODE CRIM.PROC.ANN. art. 37.07, § 4 (Vernon Supp.1990). This Court had held that the amendment to article 37.07, Section 4 eliminates the applicability of *Rose* to cases tried after its date. *Johnson v. State*, 800 S.W.2d 563, 567 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). Appellant's trial began in October of 1990. Therefore, his case is governed by both the constitutional amendment and the new version of article 37.07. *See Edwards v. State*, 807 S.W.2d 338, 341 (Tex.App.—Houston [14th Dist.] 1991, pet ref'd). The jury instruction did not violate appellant's rights under the Texas Constitution.

The Court of Criminal Appeals has recently addressed the issue of the aforementioned instruction and its constitutionality in relation to the Bill of Rights. *Oakley v. State*, 830 S.W.2d 107 (Tex.Crim.App.1992). The Court noted that where an inconsistency exists between the original Constitution and an amendment, specific provisions control and the latest adopted provision controls. 830 S.W.2d at 110. In applying these rules of construction, the Court held that the " 'due course of law' taint is clearly removed from Article 37.07, Section 4(a)." *Id* at 110.

■ Appellant also complains that a defendant's right to due process under the United States Constitution is violated unless he has an opportunity to challenge the veracity of evidence given in a criminal proceeding. The case upon which appellant relies involved the consideration of a presentence investigation report. *See Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). However, *Gardner* is distinguishable from the case at bar on its facts. There was no evidence admitted which was particular to appellant for which no opportunity to challenge was given. *See Mohammad v. State*, No. 0927–91 (Tex.Crim.App. May 6, 1992). The Court specifically instructed the jury that it could not consider the application of parole or good conduct time as to this particular defendant. We find that consideration of parole or good conduct time as allowed by article 37.07 does not violate appellant's fifth or fourteenth amendment rights. Appellant's fourth and fifth points of error are overruled.

For the reasons stated above, the judgment of the trial court is affirmed.